# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

WILLINDON JORDAN                                        CIVIL ACTION NO.

VERSUS                                                           14-342-SDD-SCR

TURNER INDUSTRIES GROUP, LLC

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by
Defendant, Turner Industries Group, LLC ("Turner" or "Defendant").  Plaintiff, Willindon
Jordan ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a
*Reply,*[3] and Plaintiff filed a *Sur-Reply.*[4]  For the following reasons, the Court finds that
Defendant's motion should be granted.

## I.     FACTUAL BACKGROUND

Plaintiff is an African-American male who has been employed as a laborer in the
construction and petrochemical industries for over 41 years.[5]  Turner is a Baton Rouge
company that provides specialized services to petrochemical, chemical, refining,
energy, power generation, pulp and paper, and other related industries.[6]  Plaintiff was
employed as a laborer at various sites owned by Turner's clients where Turner was

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 18.
[3] Rec. Doc. No. 19.
[4] Rec. Doc. No. 24.
[5] Rec. Doc. No. 18-2.
[6] Rec. Doc. No. 11-3.
28456

providing "turnaround" work involving plant maintenance.[7]   Turner states that turnaround employees are assigned to a job on a temporary basis until a turnaround is completed, or the project to which they are specifically assigned is completed.  When a particular project comes to an end, Turner contends the turnaround employees are typically laid off.[8]

Throughout his years as a laborer, Plaintiff has been an active and leading member of Baton Rouge Louisiana's Construction & General Laborers Local Union Number 1177.[9]  During Plaintiff's employment with Turner, he served as the Union's Labor Steward which he claims required him to assert and defend the rights of fellow union workers in conveying their employment grievances to company officials.[10]

Plaintiff's employment history with Turner began in 1989.  Plaintiff claims that, while working for Turner, the length of his employment on any particular job would depend on Turner's service contract with the particular client.[11]  Plaintiff's last job for Turner commenced on April 4, 2011, at PCS Nitrogen in Baton Rouge, Louisiana. Turner was contracted to provide services for PCS Nitrogen for renovation of the ammonia unit from approximately April 2011 until March 2013.  The project's purpose was to bring the ammonia unit back online, and, once completed, Turner's contract would end.[12]

During the PCS Nitrogen project, Plaintiff contends he was Turner's "lead-man" or "supervisor" of the water truck crew.  The water crew was tasked with supplying

---

[7] *Id.*
[8] *Id.*
[9] Rec. Doc. No. 18-2.
[10] *Id.*
[11] *Id.*
[12] Rec. Doc. No. 11-3.
28456

water for all of Turner's employees and workers at the worksite.[13]  Plaintiff claims that it was his responsibility, at the beginning of every work day, to obtain and complete Turner's Job Safety Analysis ("JSA") and to identify potential work related hazards involving spills at the job site.[14]  Plaintiff would then discuss these potential hazards with his crew and have every crew member initial the JSA in acknowledgment.[15]

In January of 2013, Turner contends that the PCS Nitrogen job was coming to a close as the unit began producing ammonia in late February of 2013.[16]  Around noon on Sunday, January 13, 2013, General Foreman Thurmertha Patrick ("Patrick") approached Plaintiff while he was working and brought him to the safety office where Patrick showed Plaintiff a rope resembling a hangman's noose that had been found on a scaffold.[17]  Plaintiff contends Patrick approached him because of his role as union steward for laborers.[18]  Plaintiff admitted that he did not see the rope where it was found, that he did not independently report the rope to any supervisor, and that he did not accompany Patrick when she reported the incident to Superintendent Dan Davis ("Davis").[19]

During this job, Turner conducted a safety meeting every Monday morning to address potential safety issues and discuss the day's work.[20]  This was no different on the morning of January 14, 2013, the day after the rope was discovered.  Plaintiff contends there was no mention of the reported noose incident at this safety meeting.

---

[13] Rec. Doc. No. 18, p. 4, n. 19.
[14] Rec. Doc. No. 18-5.
[15] *Id.*
[16] Rec. Doc. No. 11-5.
[17] Rec. Doc. No. 11-4, p. 11 (Deposition of Willindon Jordan, p. 39). Plaintiff contends one of his crew members, Willie Dorsey, discovered the rope and reported it to Ms. Patrick.  *Id.* (Deposition, p. 38).
[18] *Id.* at p. 13 (Deposition of Willindon Jordan, pp. 45-46).
[19] *Id.* at p. 11 (Deposition of Willindon Jordan, pp. 39-40).
[20] Rec. Doc. No. 11-6.
28456

Thus, at the conclusion of the January 14 meeting, Plaintiff stood, stated his concern over Turner's handling of the rope incident, and expressed his belief that Turner was not taking appropriate action.   Specifically, Plaintiff stated that he believed the incident called for a "stand-down," which occurs when the contractor stops all work and calls all employees for a meeting.[21]   Plaintiff contends his statement was motivated by the fact that, "[e]ven though Davis knew that several of Defendant's African-American employees were upset about the finding of a hangman's noose on the job site and even though Davis could have called his superiors on the day of the incident, he deliberately avoided mentioning the issue the day of the discovery and, adding insult to injury, he left the job site at or around 1:00 pm."[22]   Plaintiff's dissatisfaction with Turner's response to this incident was heightened because of an allegedly similar incident involving a noose which had occurred in 2012.[23]   Plaintiff claims that, in response to the 2012 incident, Turner failed to follow its own "zero tolerance" policy regarding discrimination and simply transferred the perpetrator to another location on the job site.   Plaintiff further contends that Turner only later terminated the perpetrator after the victim expressed her outrage.[24]   Then, Turner allegedly terminated the victim of the 2012 incident two weeks later based on an alleged reduction in force.[25]

Following Plaintiff's statement at the January 14 safety meeting, Plaintiff contends Davis and supervisor Michael Foreman approached him to express their

---

[21] Rec. Doc. No. 11-4, p. 12 (Deposition of Willindon Jordan, p. 42).
[22] Rec. Doc. No. 18, pp. 6-7, citing Rec. Doc. No. 18-4, pp. 55-56 and Rec. Doc. No. 18-2, p. 41.
[23] *See* Rec. Doc. No. 18-7, *Declaration* of Carrie Angeletti.
[24] *Id.*
[25] *Id.*
28456

offense at his statements during the meeting.[26]   Turner cites Plaintiff's deposition testimony where he admitted that, when he made this statement at the safety meeting, he did not know what steps Turner was taking to investigate the incident, and he had not spoken to Davis prior to the safety meeting.[27]   It is undisputed that, on or about January 16, 2013, Turner's Human Resources representative visited the work site and conducted an investigation regarding the rope incident, which included an interview of Plaintiff.[28]   Plaintiff contends he was terminated by Turner on January 29, 2013, under the ruse of a reduction in force because he was "laid off" before several men that he supervised.[29]

Turner contends that, during the relevant time frame, layoffs were ongoing as the project for PCS Nitrogen was nearing completion.   Thus, as fewer employees were present at the job site, fewer employees were needed for water distribution.  The record shows that two other members on Plaintiff's six-person water crew, along with twenty other employees, had already been laid off at the time of the January 14, 2013 meeting.[30]  Turner continued these "rolling layoffs," letting go of employees on January 11, January 14, and January 28, 2013.[31]   On January 29, 2013, Turner contends Plaintiff was laid off along with five other employees, including three laborers.[32]  Two of Plaintiff's other crew members were subsequently laid off on March 1 and March 7, 2013.[33]  The final member of Plaintiff's crew was transferred to regular maintenance at

---

[26] Rec. Doc. No. 18-2, p. 7 (Deposition of Willindon Jordan, p. 43).
[27] *Id.* (Deposition of Willindon Jordan, pp. 43-44).
[28] Rec. Doc. No. 11-4 (Deposition of Willindon Jordan, pp. 46, 51) & Rec. Doc. No. 11-3.
[29] Rec. Doc. No. 18, p. 8.
[30] Rec. Doc. No. 11-5, ¶¶ 3, 5-6.
[31] *Id.* at ¶ 6.
[32] *Id.* at ¶ 7.
[33] *Id.* at ¶ 9.
28456

PCS Nitrogen when the project ended around March 8, 2013.[34]  Thus, Turner contends that, by March 8, 2013, all remaining laborers and craftsmen had been laid off from the site.[35]

Plaintiff filed this Title VII[36] lawsuit alleging that his discharge was in retaliation for his opposition to discriminatory practices and/or his participation in proceedings to enforce rights under Title VII.[37]  Turner has moved for summary judgment on Plaintiff's claim, arguing that Plaintiff has failed to carry his burden of showing a *prima facie* case of retaliation or any pretext for Turner's employment decision.

## II.    LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[39]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[40]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by

---

[34] Rec. Doc. No. 11-3, ¶ 17.
[35] *Id.* at ¶ 16.
[36] Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*
[37] Plaintiff originally also brought a race discrimination claim; however, this claim was jointly dismissed on June 5, 2015.  Rec. Doc. No. 22.
[38] Fed. R. Civ. P. 56(a).
[39] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[40] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
28456

setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[41]   However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[42]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[43]   All reasonable factual inferences are drawn in favor of the nonmoving party.[44]   However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[45]   "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[46]

### B.  Title VII Retaliation[47]

The burden-shifting framework of *McDonnell Douglas Corp. v. Green,*[48] applies

---

[41] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[42] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[43] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[44] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[45] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[46] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[47] Plaintiff also refers to the Louisiana Employment Discrimination Law ("LEDL")(La. R.S. § 23:301, *et seq.*) in his *Complaint.*  The scope of the LEDL is the same as Title VII, and therefore, claims under the LEDL are analyzed under the Title VII framework and jurisprudential precedent. *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 477 (5th Cir. 2002); *Alderman v. Great Atlantic & Pacific Tea Co., Inc.*, 332 F.Supp.2d 932, 936 (E.D.La. 2004).  Accordingly, the Court's ruling on Plaintiff's Title VII claim applies with equal force to any LEDL claims asserted.

[48] 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

28456

to Title VII unlawful retaliation cases.[49]   To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he participated in an activity protected by Title VII, (2) he suffered an adverse employment action, and (3) there is a causal relationship between the protected activity and the adverse employment action.[50]   If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, non-retaliatory reason for its action.[51]   If the defendant does so, the plaintiff must show that the defendant's proffered reason was merely a pretext for unlawful retaliation.[52]   In Title VII retaliation claims, protected activities include (1) opposing any practice deemed an unlawful employment practice (the "opposition clause") or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII (the "participation clause").[53]

### 1.  Opposition/Participation Clauses as Activity Protected by Title VII

In the present case, Plaintiff claims his discharge was not a layoff but a retaliatory termination for his opposition to Turner's failure to enforce its discrimination policy and for his participation in the investigation of the noose incident.   The only real dispute as to Plaintiff's *prima facie* case of retaliation is the first requirement:  that he participated in an activity protected by Title VII.   It is undisputed that Plaintiff suffered an adverse employment action in being laid off, and that his layoff on January 29 was in close proximity to his statements in the January 14 safety meeting.[54]

---

[49] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).
[50] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).
[51] *Long*, 88 F.3d at 304–05.
[52] *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).
[53] *Douglas v. DynMcDermott Petrol. Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).
[54] The Court recognizes that Defendant does not concede causation between Plaintiff's layoff and his statements at the safety meeting.  The Court also recognizes that "temporal proximity alone is insufficient to prove but for causation."  *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 28456

For his actions to satisfy the opposition clause, Plaintiff must have had an objectively reasonable belief that Turner was engaged in employment practices barred by Title VII.[55]  Plaintiff contends that he had an objective and reasonable belief that, by not addressing the noose incident in the January 14 safety meeting, Turner was sanctioning an unlawfully discriminatory practice and ignoring its own zero-tolerance policy.[56]

Turner maintains that Plaintiff has failed to present evidence that he opposed an unlawful discriminatory employment practice prohibited by Title VII.  However, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented summary judgment evidence that he had an objectively reasonable belief, based on a prior incident, that Turner was not addressing race discrimination in the workplace in accordance with its own policy and the law.  The Court is not making a finding that Turner was engaged in unlawful activity, or even that Turner had not instituted a serious investigation of the incident.  The Court finds only that Plaintiff has provided support for his objectively reasonable belief that he was opposing a perceived lack of response to race discrimination in the workplace.

Turner also claims that the noose incident is an isolated incident, and Plaintiff's complaint regarding an isolated incident cannot amount to protected activity.[57] With respect to the 2012 noose incident referred to by Plaintiff, Turner contends that the *Declaration* of former employee Carrie Angeletti is irrelevant in this case as she was no

---

2007).  However, giving Plaintiff every benefit of the doubt, the Court finds this requirement satisfied under the facts of this case.
[55] *See Armstrong v. K&B Louisiana Corp.*, 488 F. App'x 779, 782 (5th Cir. 2012)(citing *Byers*, 209 F.3d at 428).
[56] Rec. Doc. No. 18, p. 10.
[57] Rec. Doc. No. 19, p. 3.
28456

longer employed by Turner in 2013, and has no knowledge of the facts of the incident that is the subject of this lawsuit.  The Court agrees that Angeletti's *Declaration* has no bearing on Plaintiff's ultimate burden to prove "but for" causation in this case; however, in analyzing whether Plaintiff has presented sufficient evidence to make a retaliation claim under the opposition clause, Angeletti's *Declaration* is relevant and can be considered.  While there is no dispute that Angeletti was no longer employed by Turner at the time of the noose incident at issue in this case, her *Declaration* reveals that she was the alleged "victim" in the 2012 noose incident.   Evidence of this incident undermines Turner's "isolated incident" argument.   Moreover, Plaintiff's alleged dissatisfaction with Turner's response to the 2012 incident, whether justified or not, arguably supports Plaintiff's reasonable belief that Turner was not investigating the 2013 incident.[58]   On a summary judgment motion, the Court cannot make credibility determinations and must view the evidence in the light most favorable to the Plaintiff; thus, on the record before the Court, Plaintiff has carried his burden of establishing a retaliation claim under the opposition clause.

The Court also disagrees with Turner's narrow reading of the participation clause.  Turner claims that, because no EEOC charge had been filed by Plaintiff at the time of his layoff, he cannot make a claim under the participation clause.  The Court reads the participation clause more broadly, as do other courts.  In fact, "[t]he anti-retaliation provision explicitly states that it protects an individual who has 'participated *in*

---

[58] The Court acknowledges Turner's evidence that it commenced an investigation of the 2013 noose incident within 24 hours of the report; however, the question is one of Plaintiff's reasonable belief.
28456

*any manner*' in a Title VII proceeding.[59]  Courts appear to consistently read this clause as evincing Congress's intent to confer broad protection under the statute."[60]  Notably,

> Additional support for an expansive reading of the participation clause can also be found by examining the broader context of the statute as a whole. The anti-retaliation provision is meant to prevent harm to employees who report discriminatory employment practices or assist in the investigation of these practices. *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 279, 129 S.Ct. 846, 852, 172 L.Ed.2d 650 (2009). The Supreme Court in *Crawford* held that "prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others" if an employer could punish employees who reported discrimination without remedy. *Id.* The purpose of the anti-retaliation clause is to "[maintain] unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir.1999) ("Section 704(a)'s protections ensure not only that employers cannot intimidate their employees into foregoing the Title VII grievance process, but also that investigators will have access to the unchilled testimony of witnesses."); *Booker*, 879 F.2d at 1313 ("The purpose of the statute is to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged.").[61]

Considering these principles, the Court finds that Plaintiff's participation as a witness in the noose investigation constitutes participation under Title VII.  Plaintiff has

---

[59] *Carpenter v. Mississippi Valley State University*, 807 F.Supp.2d 570, 591 (N.D. Miss. 2011)(quoting  42 U.S.C. § 2000e–3(a))(emphasis in original)).
[60] *Id.* at 591-92 (citing  *Pettway v. Am. Cast Iron Pipe Co.,* 411 F.2d 998, 1006 n. 18 (5th Cir.1969) (noting that the participation clause provides " "exceptionally broad" protection"); *Kelley v. City of Albuquerque*, 542 F.3d 802, 814 (10th Cir. 2008) ("The term 'any' carries an expansive meaning when ... it is used without limitation ... When the term is given its natural effect in this statutory context it relates to all types of participation."); *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 175 (2d Cir. 2005) ("Congress chose to provide wide-ranging protection by shielding an employee who 'participate[s] in any manner' in a Title VII proceeding.") (brackets in original); *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (noting that the participation clause's "explicit language ... is expansive"); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (stating that "federal courts have generally granted less protection for opposition than for participation" and that "the participation clause offers exceptionally broad protection"); *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir.1988) ("The participation clause is broadly construed to protect employees who utilize the tools provided by Congress to protect their rights.")).
[61] *Id.*
28456

made a *prima facie* case of Title VII retaliation.

### 2. Legitimate, Non-Discriminatory Reason

Because Plaintiff has established a *prima facie* case of retaliation, the burden shifts to Turner to provide a legitimate, nondiscriminatory reason for its employment action.  Turner maintains that Plaintiff was laid off "for a single, legitimate reason: Turner's job at PCS Nitrogen was winding down, and as Plaintiff was aware, reduced manpower needs result in layoffs on temporary turnaround jobs."[62]  Turner cites recent Fifth Circuit jurisprudence holding that layoffs in response to business conditions "are presumptively legitimate and nondiscriminatory because a reduction in force 'is itself a legitimate, nondiscriminatory reason for discharge.'"[63]  It is undisputed that the PCS Nitrogen job was temporary and that Plaintiff was aware of this fact.  Plaintiff admitted that he had been laid off by Turner at least eight or nine times prior to January 29, 2013.[64] All of the evidence submitted by Turner establishes that rolling layoffs were ongoing at the PCS Nitrogen site in January of 2013 in conjunction with the job coming to a conclusion.[65]  Thus, the Court finds that Turner has presented a legitimate, non-discriminatory reason for Plaintiff's layoff and its timing.

### 3. Pretext

Considering Turner's legitimate, non-discriminatory reason for Plaintiff's layoff, the burden shifts back to the Plaintiff to present summary judgment evidence that this reason is a pretext for retaliation.  Under the law, Plaintiff now has the burden of proving

---

[62] Rec. Doc. No. 11-1, p. 12.
[63] *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 269-70 (5th Cir. 2013)(quoting *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996).
[64] Rec. Doc. No. 11-4, p. 9 (Deposition of Willindon Jordan, p. 32).
[65] *See* Rec. Doc. Nos. 11-3, 11-4, & 11-5.
28456

that, "but for" the discriminatory purpose, he would not have been laid off.[66]  With scant evidentiary support, Plaintiff makes the blanket assertion that, "in instances of genuine rolling layoffs, there is absolutely no history of team leaders or supervisors being 'laid off' or terminated early in or during the middle of the process, before the individuals they lead are eliminated from underneath as work wraps up on the present project."[67] Relying only on the "so-called 'sniff test'",[68] rather than evidence or jurisprudence, Plaintiff contends he has set forth a genuine fact issue that must be presented to a jury. The Court disagrees.

Plaintiff contends that crew member Willie Dorsey testified that a lead-man is usually one of the last employees to be laid off at a particular job.[69]  Plaintiff further contends that, in light of his work ethic and good reputation as a "team player," it is unreasonable that Turner would not have laid him off last.  Plaintiff essentially claims that Turner disregarded its own criteria in selecting employees for layoff, citing to the testimony of Davis that "you keep your best people,"[70] and the testimony of Supervisor Stacy Howard that "you've got to have water."[71]

As Turner notes, this testimony fails to rebut the *Declaration* of Lee Joseph Paille IV ("Paille"),[72] who declared that he was the supervisor of Plaintiff's water crew for the

---

[66] *See Udoewa v. Plus4 Credit Union*, 754 F.Supp.2d 850, 880 (citing *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)).
[67] Rec. Doc. No. 18, p. 12.
[68] *Id.*
[69] *Id.* at p. 13, citing Rec. Doc. No. 18/3, p. 22 (Deposition of Willie Dorsey, p. 83).
[70] Rec. Doc. No. 18-4, p. 13 (Deposition of Daniel Lee Davis, p. 45).
[71] Rec. Doc. No. 18-6, p. 15 (Deposition of Stacy Lamar Bo Howard, p. 55).
[72] Rec. Doc. No. 11-5.
28456

PCS Nitrogen job.  Paille declared that the water crew consisted of six laborers,[73] one of whom was Plaintiff.  Paille also declared that he simply selected employees for layoff as the need to reduce manpower continued.  Two of the six water crew members were laid off before Plaintiff.[74]

Turner also takes issue with Plaintiff's unsupported assertion that lead men were not generally laid off before other crew members.  Turner cites Dorsey's actual testimony that, by the time he (Dorsey) was laid off on March 7, "just about all of the lead men was gone."[75]  Turner argues, and the Court agrees, that Dorsey's testimony belies Plaintiff's assertion that lead men were never laid off before crew members.

The Court finds that Plaintiff has failed to demonstrate a fact issue as to the "but for" cause for his layoff.  The Fifth Circuit has held that a plaintiff's burden in proving "but for" causation "'is more stringent… and requires the plaintiff to reveal 'a conflict in substantial evidence on the ultimate issue of retaliation.'"[76]  The evidence before the Court establishes that Turner laid off an additional 116 employees between January 29 and March 8, 2013, as the PCS Nitrogen job came to a close.[77]  The Court finds that no rational jury could conclude that Plaintiff's layoff was part of a grand scheme whereby Turner laid off Plaintiff's entire water crew, along with a myriad of other employees, solely to retaliate against Plaintiff for his statement at the January 14 safety meeting. Moreover, "[c]onclusory allegations of retaliation are insufficient, which means that a

---

[73] Willindon Jordan (Plaintiff), laid off January 29; William Dorsey, laid off March 7; Paula Reed, laid off January 4; Robert Curtis, laid off March 1; Robert Miller, and Eddie Jolla, laid off January 4.  Rec. Doc. No. 11-5.

[74] *Id.* at ¶¶5-7.

[75] Rec. Doc. No. 18-3, p. 21 (Deposition of Willie Dorsey, p. 79).

[76] *Alfred v. Louisiana Dept. of Corrections*, 2015 WL 4578413, at *1 (5th Cir. July 30, 2015)(quoting *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir. 2001)).

[77] Rec. Doc. No. 11-3, ¶ 16.

28456

plaintiff must allege more than his personal belief that he was the victim of retaliation."[78]

Because there are no genuinely disputed facts to suggest that the conclusion of the

PCS Nitrogen job was not the "but for" reason for Plaintiff's layoff, summary judgment in

favor of Turner is warranted in this case.

## III.    CONCLUSION

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[79] is

GRANTED.  Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>September 14, 2015</u>.


_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[78] *Guy v. Leblanc*, 2015 WL 4755078 at *9 (E.D. La. Aug. 10, 2015)(citing *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir.1999) (citations omitted)).
[79] Rec. Doc. No. 11.  The Court has considered all of the parties' arguments whether or not specifically addressed herein.
28456